Granovsky & Sundaresh PLLC
Benjamin Rudolph Delson
Alexander Granovsky
48 Wall Street, 11th Floor / New York, NY 10005
delson@g-s-law.com / ag@g-s-law.com
(646) 524-6001
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIZANOOR RAHAMAN,<br>on behalf of himself and all other persons<br>similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>SECOND AVENUE CATERING INC.,<br><br>    *Defendant*. | CASE NO.:<br><br>**COLLECTIVE AND CLASS<br>ACTION COMPLAINT WITH<br>JURY DEMAND** |

Plaintiff Mizanoor Rahaman ("Rahaman"), on behalf of himself and others similarly situated, upon personal knowledge as to himself and upon information and belief as to other matters, through his attorneys, Granovsky & Sundaresh PLLC, brings this action against Defendant Second Avenue Catering Inc. ("Second Avenue," and/or "Defendant"), as an opt-in collective action for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq*., and supporting regulations ("FLSA"), and as an opt-out Rule 23 class action for violations of New York Labor Law, Art. 6, §§ 190 *et. seq*., and Art. 19, §§ 650 *et. seq*., and the supporting New York State Department of Labor regulations (collectively, "NYLL") and the New York City Fair Workweek Law, N.Y.C Admin. Code § 20-1201 *et. seq*.

**NATURE OF ACTION**

1.      This is an action for wage theft.

2.      Defendant is a Subway restaurant franchisee operating a Subway restaurant located at 834 2nd Avenue, New York, NY 10017.  While Plaintiff cannot yet identify the individuals who own and operate Defendant, upon information and belief, those individuals also own and operate approximately eleven other Subway franchises in New York City.

3.      On or about September 7, 2022, Mr. Rahaman began working as a Subway employee at Defendant's Subway Restaurant # 25065-0 located at 834 2nd Avenue, Floor 1, New York, NY 10017.

4.      Mr. Rahaman simply wanted a good job.  He worked hard, often working more than ten hours per shift.  But Defendant, and the individuals who own and operate Defendant, took advantage of Mr. Rahaman's strong work ethic.

5.      Defendant failed to pay Mr. Rahaman overtime wages, earned tips, and spread of hours pay, in violation of the FLSA and NYLL.   Defendant also failed to provide Mr. Rahaman with appropriate notice of schedules and schedule changes as required by the New York City Fair Workweek Law and failed to pay Mr. Rahaman the premiums required by that law.

6.      What Plaintiff Rahaman experienced was substantially the same as what other hourly employees experienced working for Defendant.

7.      Upon information and belief, what Plaintiff Rahaman experienced was substantially the same as what other hourly employees experienced at the approximately eleven other Subway franchises owned and operated by the individuals who own and operate Defendant.

8.      Plaintiff Rahaman, on behalf of himself and on behalf of all other similarly situated employees and former employees of Subway franchises owned by Defendant in New York State,

brings this lawsuit as a proposed collective action seeking recovery against Defendant for Defendant's violation of the FLSA and alleges that he and all others who opt into this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), are entitled to recover: (i) unpaid tips; (ii) unpaid overtime wages; (iii) liquidated damages; and (iv) attorneys' fees and costs.

9.     Plaintiff Rahaman, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), also brings this action as a proposed class action on behalf of himself and on behalf of all other similarly situated employees and former employees of Subway franchises owned by Defendant in New York City, seeking recovery against Defendant for Defendant's violation of NYLL and the New York City Fair Workweek Law, and alleges that he and all members of that class are entitled to recover from Defendant: (1) unpaid wages, including unpaid overtime wages, unpaid tips, unpaid spread of hours wages, and unpaid New York City Fair Workweek law premiums; (2) liquidated damages; and (3) interest,  attorneys' fees and costs.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331, 1367, and 2201.

11.     This Court has subject matter jurisdiction over Plaintiffs' state and city law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this District.

13.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Plaintiff**

14.     Plaintiff Rahaman is an individual residing in Queens County, New York.  Rahaman was, throughout his entire employment with Defendant, a non-exempt hourly employee within the meaning of the FLSA and NYLL.

15.     At all relevant times, the work performed by Rahaman and similarly situated employees was to the benefit of the business operated by Defendant, and Rahaman and similarly situated employee were "employees" of Defendant within the meaning of the FLSA and NYLL.

16.     At all relevant times, Rahaman and similarly situated employees worked in interstate commerce and fall within the protections of the FLSA.

17.     At all relevant times, Rahaman and similarly situated employees were "fast food employees" within the meaning of the New York City Fair Workweek Law.

18.     A written consent form for Rahaman to serve as a party plaintiff is attached to this Complaint.

**Defendant**

19.     Defendant is a New York State for-profit corporation, with a principal place of business located at 834 2nd Avenue, New York, NY 10017.

20.     Defendant operates a Subway restaurant franchise located at 834 2nd Avenue, New York, NY 10017.

21.     Defendant was and is a covered employer within the meaning of the FLSA and NYLL, and at all relevant times employed Rahaman and similarly situated employees.

22.     Defendant has maintained control, oversight, and direction over Rahaman and similarly situated employees, including timekeeping, payroll, and other employment practices.

23.    Defendant applied the same employment policies, practices, and procedures to all hourly employees in its operation, including policies, practices, and procedures with respect to scheduling and the payment of wages, overtime, tips, and spread of hours pay.

24.    Upon information and belief, Defendant's owners applied the same employment policies, practices, and procedures to all hourly employees at all of the approximately eleven Subway franchises they owned and operated, including policies, practices, and procedures with respect to scheduling and the payment of wages, overtime, tips, and spread of hours pay.

25.    Upon information and belief, at all relevant times herein, Defendant has had an annual gross volume of sales in excess of $500,000.

26.    At all times relevant to this Complaint, Defendant was an "enterprise" as defined by the FLSA, and an "enterprise engaged in commerce" under the FLSA, and an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

27.    Upon information and belief, at all relevant times, Defendant has used goods produced in interstate commerce.

28.    At all relevant times, Defendant was the employer of Rahaman, the FLSA Collective Action Plaintiffs, and the members of the Class within the meaning of the FLSA and NYLL.

29.    Defendant is a "fast food employer" operating "fast food establishments" under the New York City Fair Workweek Law, N.Y.C. Admin. Code § 20-1201 *et seq.*

30.    Defendant caused the violations set forth in this Complaint.

## **STATEMENT OF FACTS**

31.    Defendant operates a Subway restaurant franchise in New York City.

32.    In or about September 2022, Rahaman began working for Defendant as a Subway employee.

33.    Rahaman was employed by Defendant to work in its Subway restaurant # 25065-0 located at 834 2nd Avenue, Floor 1, New York, NY 10017.

34.    Rahaman's duties included taking orders and making sandwiches for Defendant's Subway customers.

35.    Rahaman's wage was $15 per hour plus tips.

36.    Rahaman's position was non-exempt, and under the FLSA and NYLL, he was entitled to overtime wages of $22.50 for every hour he worked in excess of 40 hours per workweek.

37.    Rahaman regularly worked more than 40 hours per workweek while employed with Defendant but was not paid overtime wages for all overtime hours he worked.

38.    As an hourly, non-exempt employee under NYLL, Rahaman was entitled to spread of hours pay equivalent to one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of his shift, including meals and breaks, exceeded 10 hours.

39.    Rahaman regularly worked more than 10 hours per shift while employed with Defendant but was not paid spread of hours pay.

40.    Pursuant to NYLL § 195, the Defendant was required to provide Rahaman with a wage statement that included, *inter alia,* the dates of work covered by that payment of wages, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

41.    The wage statements Rahaman received from the Defendant did not include, *inter alia*:

     a.   The dates of work covered by that payment;
     b.   The rate or rates of pay and basis thereof;

    c.   The regular hourly rate of pay;
    d.   The overtime rate of pay;
    e.   The number of regular hours worked; or
    f.   The number of overtime hours worked.

42.    The wage statements Rahaman received from the Defendant did not include any amount for tips.

43.    The wage statements Rahaman received from the Defendant did not include any information about the spread of hours pay or Fair Workweek Law premium pay.

**Defendant's Own Records Show It Cheated Rahaman Out of Pay**

44.    The Defendant has or had a policy and practice of knowingly and willfully refusing to pay tips, wages, overtime, and spread of hours.

45.    Defendant's records show that—even for the hours it credited Rahaman with working—Defendant paid Rahaman only straight time for his hours worked, rounded down to the nearest dollar, and failed to pay Rahaman overtime wages, tips, spread of hours pay or Fair Workweek Law premiums.

46.    In the course of its regular business, the Defendant created a Weekly Time Punch Report that reflected an employee's time worked each day in the week, based on the employee's clock-in and clock-out times.  Defendant's Weekly Time Punch Report identified Rahaman as UserId 11.

47.    In the course of its regular business, the Defendant created a weekly Storewide Cash Report that showed weekly sales details including the amount of tips received from customers for that period, and individual "cash drops" by UserId.

48.    The following are examples of Defendant's illegal pay practices with respect to Rahaman.  Upon information and belief, these are typical of how Defendant paid all its

employees, and how the owners of Defendant paid all employees of the approximately eleven Subway franchises they owned.

**Rahaman's Workweek 9/7/2022 to 9/13/2022**

49.    The Defendant's Weekly Time Punch Report for the period 9/7/2022 to 9/13/2022 showed that Rahaman worked 10.82 hours on 9/12/2022 and 10.80 hours on 9/13/2022 for a total of 21.62 hours for the period.

50.    The Defendant's Storewide Cash Report for the period 9/7/2022 to 9/13/2022 showed that store #25065-0 collected $277.09 in tips for the period.  The report also showed that Rahaman, identified as User 11, made four cash drops during the period, but does not list the date of the cash drops.

51.    On or about 9/23/2022, Rahaman received his first paycheck and wage statement from the Defendant.

52.    Rahaman's first wage statement purported to be for a five-day "pay period" from 9/19/2022 to 9/23/2022, and showed a gross payment to Rahaman of $324.00.

53.    However, even though Rahaman's first wage statement reflected a "pay period" of 9/19/2022 to 9/23/2022, that wage statement actually reflected the hours Rahaman worked during the seven-day period 9/7/2022 to 9/13/2022 as listed in Defendant's Weekly Time Punch Report for the period 9/7/2022 to 9/13/2022.

54.    Defendant's Weekly Time Punch Report for the period 9/7/2022 to 9/13/2022 showed that Rahaman worked 10.82 hours on 9/12/2022 and 10.80 hours on 9/13/2022, but Defendant did not pay Rahaman any spread of hours wages for the two days he worked more than 10 hours per shift during the period.

55.     Defendant's Storewide Cash Report for the period 9/7/2022 to 9/13/2022 showed the receipt of $277.09 in tips for the period during which Rahaman worked 21.62 hours and made four cash drops, but Defendant did not pay Rahaman any tips for the period.

**Rahaman's Workweek 9/14/2022 to 9/20/2022**

56.     The Defendant's Weekly Time Punch Report for the period 9/14/2022 to 9/20/2022 showed that Rahaman worked:

> a.   10.97 hours on 9/14/2022;
> b.   7.17 hours on 9/15/2022;
> c.   10.95 hours on 9/16/2022;
> d.   9.97 hours on 9/17/2022;
> e.   11.17 hours on 9/19/2022; and
> f.   11.83 hours on 9/20/2022,

In total, Rahaman worked a total of not less than 62.06 hours for the period 9/14/2022 to 9/20/2022.

57.     The Defendant's Storewide Cash Report for the period 9/14/2022 to 9/20/2022 showed that store #25065-0 collected $347.46 in tips for the period.  The report also showed that Rahaman, identified as User 11, made six cash drops during the period.

58.     On or about 9/30/2022, Rahaman received his second paycheck and wage statement from the Defendant.

59.     Rahaman's second wage statement purported to be for the five-day "pay period" from 9/26/2022 to 9/30/2022 and showed a gross payment to Mr. Rahaman of $930.00.

60.     However, even though Rahaman's second wage statement purported to be for the "pay period" from 9/26/2022 to 9/30/2022, it actually reflected the hours Rahaman worked during the seven-day period 9/14/2022 to 9/20/2022 as listed in Defendant's Weekly Time Punch Report for the period 9/14/2022 to 9/20/2022.

61.    Defendant's Weekly Time Punch Report for the period 9/14/2022 to 9/20/2022 showed that Rahaman worked more than 10 hours on four separate shifts during the period, but the Defendant did not pay Rahaman any spread of hours wages for the period.

62.    Defendant's Storewide Cash Report for the period 9/14/2022 to 9/20/2022 showed the receipt of $347.46 in tips for the period during which Rahaman worked 62.06 hours and made six cash drops, but the Defendant did not pay Rahaman any tips for the period.

63.    Defendant's Weekly Time Punch Report for the period 9/14/2022 to 9/20/2022 showed Rahaman worked 62.06 hours during the seven-day period, but the Defendant did not pay Rahaman any overtime wages for the period.

64.    Rahaman worked for the Defendant from September 12, 2022 until November 1, 2022, consisting of eight separate pay periods.  The Defendant failed to pay Rahaman correct wages, tips, overtime, and/or spread of hours pay for each of the eight pay periods.

### New York City Fair Workweek Act Violations

65.    Under New York City's Fair Workweek law, fast food employees are entitled, *inter alia*: to receive good faith estimates of their schedules and to receive fourteen days' notice of schedule changes; to consent in writing to certain schedule changes, or if they are required to work a so-called "clopening" (which is two shifts over two calendar days, when there are less than eleven hours between the shifts); and to be paid a statutory premium if their schedules are changed on short notice, or if they are required to work a so-called "clopening."

66.    Upon information and belief, Defendant had no system in place to give employees 14 day's notice of their schedules, not to accurately make payment of the premiums required by New York City's Fair Workweek law when they failed to give such notice or when their employees worked "clopenings".

67.    Upon information and belief, Defendant's failure to take steps to comply with the New York City's Fair Workweek law was the result of decisions and policies made by Defendant.

68.    Defendant did not provide the statutorily required notices to, nor obtain the statutorily required written consents from, either Rahaman or other employees, when there were changes in those employees' schedules, or when those employees worked "clopenings."

69.    Rahaman and other employees' schedules were made and distributed to employees with less than fourteen days' notice.

70.    Rahaman and other employees' schedules were changed with less than fourteen days' notice.

71.    Defendant did not pay Rahaman or other employees the required premiums when schedules were made or changed with short notice.

## FLSA COLLECTIVE ACTION ALLEGATIONS

72.    Plaintiff Mizanoor Rahaman seeks to prosecute his FLSA claims as a collective action on behalf of all persons similarly situated, specifically: All persons who are employed or were formerly employed at any Subway franchise owned by Defendant or Defendant's owners in New York City from three years prior to the filing of this Complaint to the entry of judgment in this case (the "FLSA Collective Action Period"), who were non-exempt employees within the meaning of the FLSA, and who were not paid tips, not paid their full wages for all hours worked, and/or who were not paid overtime for hours worked in excess of forty hours per workweek ("FLSA Collective Action Plaintiffs").

73.    At all relevant times, Plaintiff and the FLSA Collective Action Plaintiffs are and have been similarly situated, are and have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs,

practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper tips, wages and overtime wages.

74.    The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Action Plaintiffs. Specifically, Plaintiff and the FLSA Collective Action Plaintiffs claim that Defendant willfully violated Plaintiff's and FLSA Collective Action Plaintiffs' rights.

75.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Action Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to the FLSA Collective Action Plaintiffs via text, via email, and/or via first class mail to the last email addresses, telephone numbers and residential addresses known to Defendant.

76.    The collective action is so numerous that joinder of all Plaintiffs is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently under the sole control of the Defendant, upon information and belief, there are more than forty-five Plaintiffs of the collective action who worked for Defendant during the FLSA Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

77.    Plaintiff will fairly and adequately protect the interests of the FLSA Collective Action Plaintiffs and has retained counsel that is experienced and competent in the fields of employment law and collective action litigation. Plaintiff has no interests that are contrary to or in conflict with the FLSA Collective Action Plaintiffs of this action.

78.    The FLSA Collective Action Plaintiffs are similarly situated to Plaintiff in that they are or were denied tips, wages or overtime wages for certain hours worked beyond forty hours in a week.

79.    They are further similarly situated in that Defendant has or had a policy and practice of knowingly and willfully refusing to pay tips, wages and overtime.

80.    They are further similarly situated in that, upon information and belief, Defendant has a policy and practice of failing to provide Plaintiffs with statutorily required notice of wages or statements of their pay received, in part so as to hide Defendant's violations of the wage and hour laws and to take advantage of their employees' relative lack of sophistication in wage and hour laws.

81.    They are further similarly situated in that, upon information and belief, Defendant has a policy and practice of willfully disregarding and purposefully evading recordkeeping requirements of the FLSA by failing to maintain accurate and complete timesheets and payroll records.

82.    Upon information and belief, these practices by Defendant were done willfully to disguise the actual tips earned and actual number of hours Plaintiff and FLSA Collective Action Plaintiffs worked and to avoid paying Plaintiffs properly.

83.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Plaintiffs is impracticable. Furthermore, inasmuch as the damages suffered by individual FLSA Collective Action Plaintiffs might be relatively small, the expense and burden of individual litigation make it virtually impossible for the Plaintiffs of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

84.     Questions of law and fact common to all Plaintiffs predominate over questions that may affect only individual Plaintiffs, because Defendant has acted on grounds generally applicable to all Plaintiffs. Among the common questions of law and fact common to Plaintiff and the FLSA Collective Action Plaintiffs are:

a.  whether Defendant employed Plaintiff and the FLSA Collective Action Plaintiffs within the meaning of the FLSA;

b.  whether Defendant failed to keep true and accurate records of all tips earned by Plaintiff and the FLSA Collective Action Plaintiffs;

c.  whether Defendant failed to keep time records for all hours worked by Plaintiff and the FLSA Collective Action Plaintiffs;

d.  what proof of tips and hours worked is sufficient where the employer fails in its duty to maintain records;

e.  whether Defendant failed to pay Plaintiff and the FLSA Collective Action Plaintiffs wages for all hours worked, in violation of the FLSA and the regulations promulgated thereunder;

f.  whether Defendant failed to pay Plaintiff and the FLSA Collective Action Plaintiffs all earned tips, in violation of the FLSA and the regulations promulgated thereunder;

g.  whether Defendant failed to pay Plaintiff and the FLSA Collective Action Plaintiffs overtime wages for all hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

h.  whether Defendant's violations of the FLSA are willful as that term is used in the context of the FLSA;

      i.   whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interests, costs and disbursements and attorneys' fees; and

      j.   whether Defendant should be enjoined from such violations of the FLSA in the future.

85.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

<u>**CLASS ALLEGATIONS – NYLL & NYC FAIR WORKWEEK LAW**</u>

86.    Plaintiff Mizanoor Rahaman brings claims for relief pursuant to Rule 23 of the FRCP, on behalf of all persons who are employed or were formerly employed at any Subway franchise owned by Defendant or Defendant's owners in New York City from six years previous to the filing of this Complaint to the entry of judgment in this case (the "Class Period"), and who were nonexempt hourly employees ("the Class").

87.    The members of the proposed Class should be readily ascertainable from the records of Defendant. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, upon information and belief there are at least forty-five (45) members of the Class.

88.    Plaintiff Mizanoor Rahaman is a member of the Class.

89.    Plaintiff Mizanoor Rahaman's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were injured by Defendant in that they have all been uncompensated, undercompensated, untimely compensated,

failed to receive proper notice of schedule changes, failed to receive premium pay for schedule changes and "clopenings," and did not give consent to work after improper schedule changes, all due to Defendant's common policies, practices, and patterns of conduct. Defendant's policies and practices affected everyone in the Class similarly, and Defendant received the same benefits from its unfair and unlawful acts with respect to each member of the Class.

90.    Plaintiff Mizanoor Rahaman is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff Mizanoor Rahaman is represented by attorneys who are experienced and competent in both collective action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases. Plaintiffs do not seek to recover as damages, through the class action, any statutory penalties.

91.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

92.    Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a

class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.

93.    The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

94.    Upon information and belief, many of Defendant's current and former employees are afraid to assert their rights out of fear of direct or indirect retaliation by Defendant.

95.    Upon information and belief, many of Defendant's current and former employees are fearful of bringing claims because they fear disclosure of their immigration status, or because they fear that doing so can harm their employment, future employment, and future efforts to secure employment.

96.    Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

97.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including questions concerning:

>       a.    whether Defendant operated "fast food establishments" under the New York City Fair Workweek Law, N.Y.C. Admin. Code § 20-1201 *et seq.*;

>       b.    whether Defendant maintained proper records for all hours scheduled and worked by Plaintiff Mizanoor Rahaman and the members of the Class;

c.   whether Defendant maintained proper records for all premiums paid to Plaintiff
Mizanoor Rahaman and the members of the Class;

d.   what proof of schedules and pay worked is sufficient where the employer fails in
its duty to maintain records;

e.   whether Defendant paid Plaintiff Mizanoor Rahaman and the Class members the
statutorily required premiums for schedule changes, and for "clopenings," under
the New York City Fair Workweek Law;

f.   whether Defendant provided Plaintiff Mizanoor Rahaman and the Class members
with proper New York City Fair Workweek Law notices, and obtained proper
New York City Fair Workweek Law consents;

g.   whether Defendant compensated Plaintiff Mizanoor Rahaman for all hours
worked;

h.   whether Defendant compensated Plaintiff Mizanoor Rahaman and the Class
members for all tips earned;

i.   whether Defendant correctly compensated Plaintiff Mizanoor Rahaman and the
Class members for hours worked in excess of 40 per workweek;

j.   whether Defendant correctly compensated Plaintiff Mizanoor Rahaman and the
Class members on a timely basis;

k.   whether Defendant correctly compensated Plaintiff Mizanoor Rahaman and the
Class with spread of hours pay, as required by NYLL;

l.   whether Defendant failed to furnish Plaintiff Mizanoor Rahaman and the Class
members with a proper time of hire wage notice, as required by NYLL;

    m.  whether Defendant failed to furnish Plaintiff Mizanoor Rahaman and the Class members with accurate statements with every payment of wages, as required by NYLL;

    n.  whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory damages, costs and attorneys' fees; and

    o.  whether Defendant should be enjoined from such violations of the NYLL and NYC Fair Workweek Law in the future.

**COUNT I**
**Fair Labor Standards Act – Failure To Pay Wages, Overtime Wages, and Tips**
*(Brought on behalf of Plaintiff and the Collective Action Plaintiffs)*

98.    Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

99.    At all relevant times, Defendant employed Plaintiff Rahaman and each of the Collective Action Plaintiffs within the meaning of the FLSA.

100.    At all relevant times, Defendant had a policy and practice of refusing to pay all wages due, including all overtime wages due, and of refusing to pay all tips earned by all employees. This included:

    a.  Rounding employees pay down to the nearest whole dollar.

    b.  Paying employees less than one-and-one-half times the hourly wage for hours worked in excess of forty hours in a given workweek.

    c.  Not paying employees the tips earned by those employees.

101.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

102.    The uncompensated and undercompensated time typically amounted to many hours per week for Plaintiff Rahaman and each Collective Action Plaintiff. As a result of Defendant's

willful failure to compensate their employees, including Plaintiff Rahaman and the FLSA Collective Action Plaintiffs, Defendant has violated and continues to violate the FLSA.

103.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

104.    Due to Defendant's FLSA violations, Plaintiff Rahaman and the Collective Action Plaintiffs are entitled to recover from Defendant their unpaid wages, overtime and tips, and an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to the FLSA.

## COUNT II
### New York Labor Law – Failure to Pay Timely Wages, Spread of Hours, and Provide Accurate Wage Statements
### *(Brought on behalf of Plaintiff and the Class)*

105.    Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

106.    Defendant did not timely pay Plaintiff and the Class all wages earned, in violation of NYLL.

107.    Defendant did not pay Plaintiff and the Class all tips they earned, in violation of NYLL.

108.    Defendant never paid Plaintiff and the Class overtime wages for the hours they worked in excess of 40 per workweek, in violation of NYLL.

109.    Defendant never paid Plaintiff and the Class spread of hours pay for the days the Plaintiffs worked more than 10 hours per shift, in violation of NYLL.

110.    Due to Defendant's violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendant the amount of their untimely paid tips, wages, overtime wages, spread-of-hours

pay, plus an equal amount as liquidated damages, plus reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL.

111.    Furthermore, Defendant failed to provide Plaintiff and the Class with a proper time of hire wage notice and an accurate statement of wages with every payment of wages as required by NYLL § 195.

112.    Due to Defendant's violation of NYLL § 195, Plaintiff and the Class are entitled to statutory penalties, as well as reasonable attorneys' fees and costs, as provided for by NYLL § 198.

## COUNT III
### New York City Fair Workweek Act – Failure to Provide Proper Notice of Schedule Changes, No Consent for Schedule Changes, and Failure to Pay Required Premiums
*(Brought on behalf of Plaintiff and the Class)*

113.    Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

114.    At all relevant times, Plaintiff Rahaman and the Class Members were "fast food employees" employed by Defendant, and Defendant was a "fast food employer" of Plaintiff Rahaman and the Class Members, within the meaning of the New York City Fair Workweek Law.

115.    Defendant willfully violated Plaintiff Rahaman's and the Class Members' rights under the New York City Fair Workweek Law including by:

    a.  Not providing Plaintiff Rahaman and the Class Members with adequate notice of their schedules;

    b.  Not providing required notices, including not obtaining advanced written consent from Plaintiff Rahaman and the Class Members, for schedule changes and "clopenings;"

    c.  Not paying Plaintiff Rahaman and the Class Members required premiums when schedules were made or changed with less than adequate notice.

116.   Defendants' violations were willful.

117.   Due to Defendant's violations of the New York City Fair Workweek Law, Plaintiff Rahaman and the Class Members are entitled to recover from Defendants their unpaid premiums, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to N.Y.C. Admin. Code § 20-1201 et seq.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

    a.  Certification of this case as a Collective Action under the FLSA;

    b.  An award of unpaid wages, unpaid overtime wages, unpaid tips, and an additional and equal amount as liquidated damages pursuant to the FLSA to Plaintiff Rahaman and the FLSA Collective Action Plaintiffs;

    c.  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

    d.  Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

    e.  A compensatory award of unpaid wages, unpaid spread-of-hours wages, unpaid overtime wages, unpaid tips, and unpaid premiums due to Plaintiff Rahaman and the Class as delimited above under NYLL and the New York City Fair Workweek Law, and an additional award of liquidated damages and statutory damages due to Plaintiffs under NYLL, including statutory damages for failure to provide wage notices and wage statements under NYLL §198;

f.  Pre-judgment and post-judgment interest;

g.  Reasonable attorneys' fees and costs of this action as allowed under FLSA, NYLL and the New York City Fair Workweek Law; and

h.  Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiff Mizanoor Rahaman demands a trial by jury on all issues so triable.


Dated: New York, New York
        January 9, 2024

                        Respectfully Submitted,
                        GRANOVSKY & SUNDARESH PLLC

                        /s/ Benjamin Rudolph Delson
                        Benjamin Rudolph Delson (BD-1724)
                        Alexander Granovsky (AG-6962)
                        48 Wall Street / New York, NY 10005
                        delson@g-s-law.com
                        ag@g-s-law.com
                        (646) 524-6001
                        *Attorneys for Plaintiff Mizanoor Rahaman*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIZANOOR RAHAMAN,<br>on behalf of himself and all other persons<br>similarly situated, | CASE NO.: |
| *Plaintiffs*, | **CONSENT TO BE PARTY**<br>**PLAINTTIFF** |
| v. | |
| SECOND AVENUE CATERING INC., | |
| *Defendant.* | |

MIZANOOR RAHAMAN states:

1.  I am the plaintiff in the above-captioned action. My address is 903 35th Avenue, Apt. 5, Astoria, NY 11106.

2.  Pursuant to 29 USC §216(b), this action asserts claims under the Fair Labor Standards Act ("FLSA"), 29 USC §201 *et seq.* on behalf of myself and all other employees similarly situated.  Pursuant to 29 USC§§2016(b) and 256, I consent to being a party plaintiff in this action and to the filing and prosecution of the above referenced FLSA claims on my behalf and on behalf of all other employees similarly situated.

Dated:       January 9, 2024
             Astoria, NY

DocuSigned by:

*RAHAMAN*

8C32B8679BED4C7...

MIZANOOR RAHAMAN